513 A.2d 466

**EASTERN CONTINUOUS FORMS, INC. and Rebel Business Forms, Appellants**

v.

**ISLAND BUSINESS FORMS, INC.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1985.

Filed Aug. 1, 1986.

William B. Brooks, Norristown, for appellants.

Barbara R. Watkins, Norristown, for appellee.

Before ROWLEY, DEL SOLE and BECK, JJ.

DEL SOLE, Judge:

Eastern Continuous Forms, Inc. (Eastern) is a Pennsylvania Corporation having offices and manufacturing facilities in Montgomery County, Pennsylvania. Island Business Forms, Inc. (Island) is incorporated under the laws of the Territory of the United States Virgin Islands.

Eastern filed a complaint in Assumpsit seeking to recover for various materials and services allegedly supplied to Island for which Island continues to refuse to pay the balance due. The trial court entered an order sustaining Island's preliminary objections to the complaint which claim

jurisdiction and venue are improper in Montgomery County, Pennsylvania.[1]

Initially it must be noted that:

when preliminary objections, if sustained, would result in the dismissal of an action, such objections should be sustained only in cases which are clear and free from doubt. (citation omitted). Moreover, when deciding a motion to dismiss for lack of personal jurisdiction the court must consider the evidence in the light most favorable to the non-moving party.

*Barber v. Pittsburgh Corning Corp.*, 317 Pa.Super. 285, 302–303, 464 A.2d 323, 332 (1983).

Considering the evidence in the light most favorable to Eastern, it is not clear and free from doubt that personal jurisdiction over Island is improper in Montgomery County, Pennsylvania.

"The power of a court to exercise *in personam* jurisdiction over a non-resident defendant turns upon two considerations: (1) jurisdiction must be conferred by the state long-arm statute, and, (2) the exercise of jurisdiction under the statute must meet constitutional standards of due process." *Hewitt v. Eichelman's Subaru, Inc.*, 341 Pa.Super. 589, 592, 492 A.2d 23, 24 (1985). Under the Commonwealth's long arm statute,[2] "(j)urisdiction of the Pennsylvania courts may be exercised with respect to all persons, including corporations, 'to the fullest extent allowed under the Constitution of the United States.' 42 Pa.C.S. § 5322(b)" *Slota v. Moorings, Ltd.*, 343 Pa.Super. 96, 101, 494 A.2d 1, 3 (1985).

"The Due Process Clause of the Fourteenth Amendment to the United States Constitution permits personal jurisdiction over a defendant in any State with which the defendant

1. "Normally, a challenge to the lower court's personal jurisdiction over a defendant is raised in preliminary objections raising a question of jurisdiction, pursuant to Pa.R.C.P. No. 1017(b)(1)." *Cathcart v. Keene Indus. Insulation*, 324 Pa.Super. 123, 133 n. 7, 471 A.2d 493, 498 n. 7 (1984).

2. 42 Pa.C.S.A. § 5322.

has 'certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Milliken v. Meyer,* 311 U.S. 457, 463 [61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)].' " *Calder v. Jones,* 465 U.S. 783, 787, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804, 810 (1984) quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Consistent with this principle "the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542, (1985). Furthermore, as to contractual obligations, "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at 473, 105 S.Ct. at 2182, 85 L.Ed.2d at 540, quoting *Travelers Health Assn. v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950). See also *McGee v. International Life Insurance Co.,* 355 U.S. 220, 222–223, 78 S.Ct. 199, 200–201, 2 L.Ed.2d 223 (1957).

Critical to due process analysis "is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980). Indeed, even a single act can support jurisdiction. *McGee v. International Life Insurance Co., supra,* 355 U.S. at 223, 78 S.Ct. at 201, 2 L.Ed.2d at 223.

Granted, "(i)f the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum ... the answer clearly is that it cannot." *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at 478, 105 S.Ct. at 2185, 85 L.Ed.2d at 544. However, it is the factors of "prior negotiations and contemplated future con-

sequences, along with the terms of the contract and the parties' actual course of dealing that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at 479, 105 S.Ct. at 2186, 85 L.Ed.2d at 545. Such an approach "is not susceptible of any talismatic jurisdictional formula; the facts of each case must be weighed in determining whether juridiction is proper." *Skinner v. Flymo,* 351 Pa.Super. 234, 241, 505 A.2d 616, 620, (1986).[3]

With these principles in mind, the facts of the instant case must be examined. The trial court found that "the only evidence of defendant's business conduct in Pennsylvania were some incidental phone calls made by Mr. Menin while he was in Montgomery County on unrelated business". (Trial Court Opinion at 4). The trial court also indicated, "(d)efendant certainly took no action by which it purposefully availed itself of the benefits and protections of Pennsylvania law; defendant's activities within the state being incidental at best." (Trial Court Opinion at 4–5). This reasoning overlooks substantial record evidence which as

---

**3.** Both the parties and the trial court refer to *Proctor & Schwartz Inc., v. Cleveland Lumber Co.,* 228 Pa.Super. 12, 323 A.2d 11 (1974). This Court has recently stated:

> The rigid three pronged test adopted by this Court in *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* 228 Pa.Super. 12, 323 A.2d 11 (1974), was criticized by the Chief Justice of the Supreme Court of Pennsylvania in *Kingsley & Keith (Canada) Ltd. v. Mercer International Corp.,* 500 Pa. 371, 374 n. 1, 456 A.2d 1333, 1335 n. 1 (1983) (affirmance by an equally divided court). In a later decision in *United Farm Bureau Mutual Insurance Co. v. United States Fidelity and Guaranty Co., supra* [501 Pa. 646, 462 A.2d 1300,] six justices, although evenly divided as to the result, adopted the more flexible, minimum contact analysis of jurisdictional due process. Only Justice Nix (now Chief Justice) advocated employment of the three pronged test first adopted by the Superior Court in *Proctor & Schwartz, Inc. v. Cleveland Lumber Co., supra.* By adopting the more flexible, less rigid, "minimum contacts" approach, we give deference to the admonition of the United States Supreme Court that personal jurisdiction may not turn on the application of "mechanical" test. See: *Burger King Corp. v. Rudzewicz, supra* at 478, 105 S.Ct. at 2185, 85 L.Ed.2d at 545; *International Shoe Co. v. Washington, supra* at 319, 66 S.Ct. at 159, 90 L.Ed. at 103.

*Skinner v. Flymo, supra,* 351 Pa.Super. at 241 n. 1, 505 A.2d at 620 n. 1.

previously stated must be viewed in the light most favorable to Eastern.

The complaint as noted seeks recovery for various materials and services specified in a series of invoices. This is not a situation wherein a plaintiff is seeking to establish jurisdiction on the basis of a defendant's "random", "fortuitous", or "attenuated" contacts. See *Burger King Corporation v. Rudzewicz, supra*, 471 U.S. at 475, 105 S.Ct. at 2183, 85 L.Ed.2d at 541; *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790, 797 (1984); *World-Wide Volkswagen Corp. v. Woodson, supra*, 444 U.S. at 299, 100 S.Ct. at 568, 62 L.Ed.2d at 502. This is a suit alleged to arise out of and relate to the defendant's contacts within the Commonwealth. Island is alleged to have deliberately reached out beyond the Virgin Islands and negotiated with a Pennsylvania Corporation for the purchase of various materials and services. Refusal to make the contractually required payments in the Commonwealth caused forseeable injuries to Eastern which at least makes it presumptively reasonable for Island to be called to account in the Commonwealth of Pennsylvania for such injuries. See *Burger King Corp. v. Rudzewicz, supra*, 471 U.S. at 480, 105 S.Ct. at 2186, 85 L.Ed.2d at 545. This position is strengthened when the factors of prior negotiations and the parties' actual course of dealing are considered. There is record testimony that Mr. Menin, Vice-President and Secretary of Island visited Easterns' plant on numerous occasions. (Deposition of Lawrence Carlin, Vice President of Eastern at 7). Further, Mr. Menin actually was involved in laying out copy at Eastern. (Deposition of Lawrence Carlin at 4–6). Although Island denies that it maintains an office in Pennsylvania, there is testimony that invoices, bills of lading and letters from Eastern were mailed to Island at Mr. Menin's Norristown law office. (Deposition of Lawrence Carlin at 9). Proofs of work performed by Eastern were mailed to the Norristown office when not picked up by Mr. Menin. (Deposition of Lawrence Carlin at 9–10).

In sum, viewed in the light most favorable to Eastern, it is not clear and free from doubt that Island's conduct and connection with the Commonwealth of Pennsylvania are such that it should not reasonably anticipate being haled into court here. Therefore, the order of the trial court sustaining Island's preliminary objections is reversed as it resulted in the dismissal of the action.

Jurisdiction relinquished.

BECK, J., files a concurring opinion.

BECK, Judge:

I agree with the majority's disposition of this appeal. However, I write separately because I disagree with the majority's conclusion that the three-pronged jurisdictional analysis enunciated in *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.* (*Proctor*), 228 Pa.Super. 12, 323 A.2d 11 (1974), has been abandoned by the Pennsylvania Supreme Court. Majority op. at 356 n. 3.

The tripartite jurisdictional analysis of *Proctor* was premised upon the United States Supreme Court's decisions in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In *International Shoe Co.* and *Hanson* the United States Supreme Court explained that jurisdictional due process requires a nonresident defendant to be subject to the jurisdiction of a forum state's courts only if the defendant has had certain "minimum contacts" with the forum state such that the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239.

Citing the jurisdictional principles outlined in *International Shoe Co.* and *Hanson*, the Superior Court in *Proctor* attempted to provide guidelines to "aid in the factual analysis necessary to make the determination of whether the requisite 'minimum contacts' are present in a given case" so

that the courts of Pennsylvania may exercise jurisdiction over a particular nonresident defendant. *Id.* 228 Pa.Super. at 18, 323 A.2d at 15. The *Proctor* guidelines consisted of a series of three considerations:

First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. Hanson v. Denckla, supra. Secondly, the cause of action must arise from defendant's activities within the forum state.... Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. International Shoe Co. v. Washington, supra....

*Proctor,* 228 Pa.Super. at 18, 323 A.2d at 15. Emphatically, the Superior Court admonished in *Proctor* that the guidelines were not to be regarded as a rigid test for assessing jurisdiction but rather were to be utilized as a general framework for evaluating jurisdiction "on an ad hoc case-by-case basis and not by the application of a mechanical rule." *Id.,* 228 Pa.Superior Ct. at 18, 323 A.2d at 15.

Relying on *Skinner v. Flymo, Inc.,* 351 Pa.Super. 234, 505 A.2d 616 (1986), the majority states that in *United Farm Bureau Mutual Insurance Co. v. United States Fidelity and Guaranty Co.* (*United Farm* ), 501 Pa. 646, 462 A.2d 1300 (1983), the Pennsylvania Supreme Court has rejected the *Proctor* three-part jurisdictional analysis and has adopted "the *more flexible* ... 'minimum contacts' approach." Majority op. at 356 n. 3 (emphasis added). To the contrary, I am not persuaded that *United Farm* signals the Pennsylvania Supreme Court's adoption of a jurisdictional analysis different from that delineated in *Proctor.*

Reading and comparing the separate opinions filed by the Supreme Court justices in *United Farm,* I conclude that a majority of the Supreme Court examined the *United Farm* jurisdictional due process issue according to the first prong of the *Proctor* three-part analysis and did not reach the second and third *Proctor* jurisdictional considerations simply because the evidence of record failed to meet even the

first *Proctor* guideline for exerting jurisdiction over the nonresident defendant.

Justice Hutchinson's *United Farm* majority opinion expressly recognized that the Superior Court's decision in *United Farm* affirmed the trial court on the basis of *Proctor. Id.* 501 Pa. at 654, 462 A.2d at 1304. The majority explained that the "Superior Court affirmed, citing *Proctor.* . . . [The Superior Court] held that . . . United Farm had 'purposefully availed itself of the privilege of acting within the Commonwealth.' " [1]  *United Farm,* 401 Pa. at 654, 462 A.2d at 1304. Therefore if the Supreme Court majority had considered inappropriate the Superior Court's reliance on *Proctor,* it had ample reason and opportunity to so state. Instead, the Supreme Court reversed the Superior Court's *United Farm* decision on the ground that the nonresident defendant, United Farm, "did not purposefully avail itself of the privilege of acting within Pennsylvania. . . ." [2]  *Id.,* 401 Pa. at 654, 462 A.2d at 1304. In other words, the Supreme Court majority employed the same jurisdictional analysis as the Superior Court but differed in the result obtained by applying the jurisdictional analysis to the facts of the *United Farm* case.

Further support for the continuing viability of the *Proctor* guidelines appears in Justice Nix's *United Farm* concurring opinion. In his concurrence, Justice Nix declares that he agrees with the majority's analysis but deems it "important . . . to reiterate the wisdom in employing the three-pronged [*Proctor*] test in assessing the due process concerns. . . ." *Id.,* 401 Pa. at 659, 462 A.2d at 1307 (Nix, J., concurring). To explicate, Justice Nix adds that in *United Farm,* "because of the failure to satisfy the first prong of the [*Proctor*] test, it is unnecessary to consider or discuss the remaining [*Proctor*] considerations." *Id.,* 401 Pa. at 659, 462 A.2d at 1307 (Nix, J., concurring). Thus, I con-

1. This is the language used to express the first *Proctor* guideline.
2. See footnote one, *supra.*

clude that the *Proctor* tripartite jurisdictional guidelines have not been discarded or disapproved by the Pennsylvania Supreme Court.

Moreover, the United States Supreme Court's recent decision in *Burger King Corp. v. Rudzewicz* (*Burger King*), 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), convinces me that the *Proctor* three-part analysis remains a proper and useful framework for evaluating jurisdictional due process. All three jurisdictional considerations enumerated in *Proctor* are repeated in *Burger King*. Pursuant to the Supreme Court's *Burger King* opinion, the courts of a forum state may exercise jurisdiction over a nonresident defendant if three requisites of jurisdictional due process are met:

> the defendant has 'purposefully directed' his activities at residents of the forum ..., and the litigation results from the alleged injuries that 'arise out of or relate to' those activities....
>
> .     .     .     .     .
>
> ... '[T]here [must] be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'
>
> .     .     .     .     .
>
> Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' *International Shoe Co. v. Washington*....

*Burger King*, 471 U.S. at 472–477, 105 S.Ct. at 2182–84, 85 L.Ed.2d at 541–43 (citations omitted). Hence, the *Proctor* guidelines comport with the United States Supreme Court's views on jurisdictional due process for nonresident defendants.