**Action Management Inc. v. Gross**

C.P. of Chester County, no. 99-00054.

*William A. Walsh,* for plaintiff.
*R. Samuel McMichael,* for defendants.

GAVIN, *J.,* January 12, 2001—

## BACKGROUND

This is a case under the Motor Vehicle Sales Finance Act, 69 P.S. §601 et seq.

On July 20, 1989, defendants purchased a new 1990 Chevrolet from Horner Motors Inc. of Oxford, Chester County, Pennsylvania. The purchase price was financed by Meridian Bank pursuant to an installment sales agreement. See exhibit P-1. Defendants ultimately defaulted, the car was repossessed and sold resulting in a deficiency judgment.

The deficiency judgment was sold to plaintiff who brings the instant matter to collect same.

## ISSUES

### 1. *What Statute of Limitations Is Applicable?*

Defendants assert that plaintiff's action is barred by the statute of limitations in that suit was not commenced until January 1999, for a breach that occurred in September 1990. On its face, this argument has appeal as contracts are generally subject to a four-year statute of

limitations. 42 Pa.C.S. §5525(7). However, exhibit P-1 bears the word "seal" to the right of both defendants' signatures. The effect of "seal" either preprinted or handwritten, adjacent to one's signature has long been resolved. *Lorah v. Nissley,* 156 Pa. 329, 27 A. 242 (1893). The use of "seal" extends the statute of limitations to 20 years. 42 Pa.C.S. §5529(b)(1). Here, the "preprinted seal" creates a presumption that the defendants intended it as their "seal" extending the statute of limitations to 20 years. While I am certain few people understand this historic anomaly, it is still the law of the Commonwealth. As the defendants offered no evidence to rebut the presumption, plaintiff's action is timely.

*2. Must Plaintiff Be a "Licensed Sales Finance Company" Under the Act To Bring This Lawsuit?*

The Act defines "sales finance company" (69 P.S. §603) as follows:

" 'Sales finance company' shall mean a person engaged as principal, agent or broker in the business of financing or soliciting the financing of installment sale contracts made between other parties, including but not thereby limiting the generality of the foregoing, the business of acquiring, investing in or lending money or credit on the security of such contracts or any interest therein whether by discount, purchase or assignment thereof, or otherwise."

Plaintiff's representative, Mr. Rex, testified that plaintiff purchases delinquent accounts and thereafter tries to collect them. This testimony was undisputed. As such, plaintiff is not involved, "in the business of financing or soliciting the financing of installment sale contracts made between other parties." Accordingly,

plaintiff need not be licensed under the Act to bring this lawsuit.

### 3. *Notice of Sale*

Defendants assert that they were unaware that their vehicle was sold. The Act at section 623.A allows for repossession upon default. Section 623.D requires written "notice of repossession" by one of several methods including registered or certified mail to the buyer's last known address. Exhibit P-2 meets the requirements of this section. A comparison of exhibit P-1 and exhibit P-2 shows that exhibit P-2 was sent to the address contained in exhibit P-1, *i.e.,* defendants' last known address.

Defendants' counsel argued that there was no proof that defendants got the notice. The easy answer is that the Act doesn't require proof of receipt, just proof that notice was sent. See *Gerety v. Hiller,* 349 Pa. 49, 36 A.2d 476 (1944). Therefore this argument fails.

### 4. *The Deficiency Judgment*

Meridian Bank sold defendants' vehicle and provided notice of the claimed deficiency which forms the basis of this complaint. See exhibit P-3.

Defendants assert that the sale was not held in a commercially reasonable manner (see paragraph 13 of new matter) and that they are not liable for the claimed deficiency. This position calls into play the interaction between section 627 of the Act and section 9504 of the Uniform Commercial Code, 13 Pa.C.S. §9504. See *Beneficial Consumer Discount Company v. Savoy,* 291 Pa. Super. 649, 436 A.2d 687 (1981), *affirmed,* 503 Pa. 74, 468 A.2d 465 (1983).

Section 627 of the Act allows the buyer, defendants herein, to "have the reasonable value of the motor vehicle at the time of resale, determined in any action or proceeding brought by the seller or holder to recover the deficiency." Thus the matter is properly raised here as plaintiff is seeking to recover the deficiency. The Uniform Commercial Code §9504(c) requires that, "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable."

Exhibit P-2 indicates the car was to be sold at the Manheim auto auction which is a Dealer Only Private Sale. Dealer refers to automobile dealers who obviously are purchasing cars for the purpose of reselling them at a profit. Is such a sale "commercially reasonable" pursuant to the Uniform Commercial Code?

There are few cases addressing this issue which is surprising given the number of repossessions that occur. One case is *Continental Bank v. Schaler,* 362 Pa. Super. 610, 525 A.2d 388 (1987). There, extensive efforts to sell the vehicle privately were unsuccessful whereupon the car was sold at auction. Debtor's argument that the car was marketed in a commercially unreasonable manner failed. Here, we have an entirely different situation. Here, only dealers could bid and certainly the bank knew, or should have known, that the dealer bid would be less than the market value of the vehicle. But for this differential there would be no incentive for a dealer to bid. While a "dealer only" auction may be a quick means of reducing the bank's exposure, it can hardly be said to be "commercially reasonable"[1] in the Absence Of Any Other Effort To Market

---

1. Selling an asset for less than value is not reasonable absent compelling reasons to do so. No such reasons were offered here.

The Car. Accordingly, I conclude as a matter of law that a sale at a private auction without any prior attempt to sell the vehicle is "commercially unreasonable." Given this finding, the burden of proof shifted to plaintiff to establish that the value of the car did not equal the indebtedness it secured. *Savoy,* 503 Pa. at 78, 468 A.2d at 467. As plaintiff failed to offer such evidence, the presumption that the value of the car equaled the indebtedness has not been rebutted and plaintiff's claim for the deficiency fails.

As the deficiency judgment was invalid, related claims for attorney's fees, etc. must also fail.

### 5. *New Matter and Counterclaim*

Defendants raised several matters by way of new matter and counterclaim. However, they failed to present any evidence to support the matters raised and the claims must fail. See N.T. 9/8/00, p. 46, ll. 22-23.

### 6. *Sanctions*

This matter is before me on plaintiff's appeal from an adverse arbitration decision.

Prior to the date scheduled for the hearing before me, plaintiff's counsel had been advised that defendants' contested notice as required by the Act and that plaintiff would have to establish same. Plaintiff's proposed method of doing so was by way of an affidavit of a bank official, which affidavit was objected to on the grounds that defendants would have no one to cross-examine. Despite this notice, plaintiff's counsel came to the hearing without a live witness to address "notice." As a result, the matter was continued conditioned upon plaintiff's paying defendants' reasonable counsel fees.

I subsequently fixed those counsel fees at $300 and to date plaintiff has failed to pay.

Plaintiff's failure to pay is especially galling in light of the fact that its counsel agreed the fee was reasonable and that the continuance was necessitated by the lack of its witness. I shall resolve this matter in the order that follows.

Based on the foregoing I make the following

## CONCLUSIONS OF LAW

(1) Defendants entered into an installment sales contract pursuant to the Motor Vehicle Sales Finance Act.

(2) Defendants defaulted under the terms of the installment sales agreement.

(3) Meridian Bank lawfully repossessed defendants' vehicle and provided the notices required by the Motor Vehicle Sales Finance Act.

(4) Sale of the vehicle at auction absent any other effort was commercially unreasonable under both the statutory and case law of this Commonwealth.

(5) Plaintiff failed to rebut the presumption that the sales price equaled the indebtedness to the bank.

(6) Defendants failed to establish the matters raised in their new matter and counterclaim.

Based on the foregoing I enter the following

## ORDER

And now, January 12, 2001, I find in favor of defendants and against plaintiff on plaintiff's complaint and I find in favor of plaintiff and against defendants on defendants' new matter and counterclaim.

Plaintiff shall have 10 days from the date of this order to pay the attorney's fees of $300 previously

ordered. If payment is not made, plaintiff's chief operating officer shall appear before the undersigned on February 5, 2001 at 10 a.m. to show cause why plaintiff should not be held in contempt.

Each side to pay its own costs.